# In the United States Court of Federal Claims

No. 24-536

Filed: August 29, 2025

|  |  |
|---|---|
| JAMES MATTHEW BROWN, | ) |
| *Plaintiff*, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| *Defendant*. | ) |

*James Matthew Brown*, pro se.

*Laurel Don Havens III*, United States Department of Justice, Civil Division, for the United States.

**OPINION AND ORDER**

      When a servicemember retires, the Department of Defense (DOD) moves his or her belongings from the servicemember's final duty station to his or her "home of selection."  While this may be in the United States, retiring servicemembers may have their belongings shipped overseas as well.  That is what Staff Sergeant James Brown and his wife chose to do; they chose Manila, Philippines as their home of selection.  But a series of problems turned their move into a nightmare.

      Mr. Brown served for twenty years in the Army until his honorable discharge in 2018.  When he and his wife decided to move to the Philippines, the Army advised Mr. Brown that he would be responsible for any duties, taxes, and demurrage fees.  But Mr. Brown's wife would not have to pay the duties because she is a Philippine national.  Mr. Brown thus chose to have her listed as the consignee to receive their shipment in Manila.  But the paperwork that a contractor completed was not correct; it listed Mr. Brown as the consignee.  Upon learning of this, Mr. Brown and the contractor began the process of changing the consignee to his wife to avoid the import duties.  There were, however, four other contractors involved in the shipment and things bogged down.  In the meantime, the shipping containers carrying Mr. Brown's belongings arrived at the port in Manila.  Without the proper paperwork, they sat in the port.  And sat.  They sat for so long that they started incurring demurrage charges, which increased each day the containers sat.

Before long, the demurrage charges ran into the tens of thousands of dollars, which Mr. Brown could not afford. But even though Mr. Brown got the paperwork corrected, the Philippine government would not allow the shipping containers to clear customs until the demurrage fees were paid. Mr. Brown now contends that these fees total more than $600,000, which he wants the Government to pay so that he can get his belongings. He alleges a breach of contract. But the agreement is clear—Mr. Brown was responsible for all duties, taxes, and demurrage charges. The court therefore grants the Government's motion to dismiss.

**I.   Background**

Mr. Brown served honorably in the Army for twenty years. ECF No. 1 at 2. Shortly after his retirement from the Army, Mr. Brown initiated the process to ship his belongings to the Philippines. He submitted an Application for Shipment And/Or Storage of Personal Property (DD Form 1299) to ship his belongings from Myrtle Beach, S.C. to Manila. *Id*.; ECF No. 12-1 at Appx 100. This application provides that the "Member/Employee is responsible for all applicable Import Customs, Duties, and Taxes." ECF No. 12-1 at Appx 100.

There was also certain counseling that DOD provided Mr. Brown regarding the shipment, although the parties disagree on what this counseling entailed. ECF No. 12 at 2; *cf*. ECF No. 14 at 1-2. Obviously, this court cannot resolve that dispute at this stage. Nor does it need to. The issue is whether the Army provided Mr. Brown guidance that he would be responsible for demurrage fees. In his communications with DOD, Mr. Brown admitted that he "was advised before my shipment left and that [he] was responsible for the demurrage charges." ECF No. 12-1 at Appx 114 (cleaned up).[1]

After he submitted his DD 1299, the Army issued a Global Bill of Lading (GBL) for Mr. Brown's shipment. *Id*. at Appx 97. A GBL serves as the contract between the Army and the Transportation Service Provider (TSP). *Cent. Transp. Int'l, LLC v. United States*, 63 Fed. Cl. 336, 338 (2004). "Each GBL serve[s] as the contract between the parties, establishing their respective rights with regard to the transportation services procured and provided." *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1016 (Fed. Cir. 1995). In this case, the TSP was American Vanpac Carriers, Inc. (AAVP). Like the DD 1299, the GBL provided that "Member/Employee is responsible for all applicable Import Customs, Duties, and Taxes[.]" ECF No. 12-1 at Appx 97. Mr. Brown advised AAVP that he wanted his wife listed as the consignee for the shipment because she was a Philippine citizen and would not be charged the import duties. *Id*. at Appx 2.

AAVP sent Mr. Brown an initial email that included various attachments regarding shipping into the Philippines. *Id.* at Appx 98-99. It also informed him that Nilson Van & Storage would be his Origin Agent. Nilson picked up Mr. Brown's belongings from him in Myrtle Beach.

Once things were ready, The Pasha Group, which was the port agent in the United States, picked up Mr. Brown's belongings from Nilsen and transported them to Charleston, S.C. for

---

[1] Mr. Brown relies on his communications with the DOD in his complaint, *see* ECF No. 1 at 2-4, so the court can rely upon them when resolving this motion to dismiss.

loading.  There was an initial issue because Mr. Brown's belongings would not fit into two forty-foot shipping containers.  They had already loaded one forty-foot container and needed a forty-five-foot container for the remainder of Mr. Brown' belongings.  But The Pasha Group did not have one available, so it arranged to get a forty-five-foot container from Maersk for shipment later.

Both containers arrived in Manila in late 2018.  But the paperwork was still causing issues, and they could not clear customs in the Philippines without proper paperwork or Mr. Brown paying the import duties as the consignee.  In late January 2019, Asian Tigers, the destination port agent, worked with Mr. Brown and his wife to correct the paperwork to identify her as the consignee and exempt their shipment from import duties.  ECF No. 12-1 at Appx 67-68.  Asian Tigers advised Mr. Brown demurrage[2] charges were accumulating and that he should pay the taxes and fees, which accumulated on a daily basis.  *Id*. at Appx 68.  At that time, Asian Tigers estimated that the total amount due for the import duties and then-accrued demurrage charges would have been around $6,000.  *Id*. at Appx 65.  Mr. Brown did not do so.

In mid-March, things remained unresolved and demurrage charges kept accruing.  Even though they had been working with the shipping companies to correct the Ocean Bills of Lading to list Mr. Brown's wife as the consignee, the changes were never made.  *Id*. at Appx 53-60.  There was a bit of infighting and finger pointing among the various companies.  *Id*.  By April 1, 2019, the OBLs had been corrected.  *Id*. at Appx 44-46, 58-59.  In late April, AAVP advised Mr. Brown that it was working to lower the demurrage fees and that they would now begin the process of clearing customs in the Philippines.  *Id*. at Appx 43.  Unable to get their belongings, Mr. Brown and his wife returned to the United States.  ECF No. 1 at 3.

Upon their return, Mr. Brown initiated a Congressional inquiry through his congressman regarding the demurrage fees.  *Id.*; ECF No. 12-1 at Appx 3.  Shortly after, Asian Tigers sent Mr. Brown a summary of the outstanding fees and advised that he could get the shipment released if he paid the balance.  ECF No. 12-1 at Appx 39.  Mr. Brown chose to wait for the outcome of the Congressional inquiry.  *Id*.  The Army responded that although it was sympathetic to Mr. Brown's plight, it was not responsible for the costs.  According to the Army, there were two issues.  First, the issue with Mr. Brown listed as the consignee rather than his wife on the paperwork.  *Id*. at Appx 16.  But that was an issue for the two port agents, The Pasha Group and Asian Tigers, to work out according to the Army.  And once that paperwork was corrected, the question of the import duties was between Mr. Brown and the Philippine government.  Similarly, the Army concluded that the demurrage fees was an issue for Mr. Brown, Asian Tigers, and the Philippine government.

Second, there was a potential issue with Mr. Brown's shipment being overweight that could result in additional charges because his shipment was almost 19,000 pounds and his entitlement only covered up to 11,000 pounds.  *Id*. at Appx 17.  If Mr. Brown were charged for the excess weight, he could appeal that charge to the Army Board for the Correction of Military Records (ABCMR).  Mr. Brown did file an appeal with the ABCMR, although it appears to

---

[2] When a shipment arrives at a destination port, there is a certain amount of storage that is included in the shipping cost.  If the container remains at the port beyond that time, daily demurrage charges accrue.

cover the demurrage charges rather than excess weight charges. *Id.* at Appx 1-8. The ABCMR denied relief.[3] *Id.* at Appx 7.

It appears the Philippine Government has declared the shipping containers abandoned and seized their contents for auction. *Id.* at Appx 9-15.

## II.   Standard of Review

A motion to dismiss pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief may be granted is appropriate when the plaintiff alleges facts that do not entitle him to a remedy. *Godwin v. United States,* 338 F.3d 1374, 1377 (Fed. Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The allegations of the complaint must indicate to the court that there is more than "a sheer possibility that the defendant has acted unlawfully." *Id.* at 1949. A complaint must be liberally construed, assuming the facts alleged in the complaint are true. *Id*. at 1949-50. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949-50 (citing *Twombly,* 550 U.S. at 555).

## III.   Discussion

At the outset, the Government argues the court should grant its motion because Mr. Brown's response to the motion was late, even after the court granted him more time. The court declines to do so. Mr. Brown has responded to the Government's motion (albeit late) and the court will consider his response because resolution on the merits is preferable to strictly holding Mr. Brown to a procedural requirement.

The court recognizes that the Government is not moving to dismiss this case for lack of subject matter jurisdiction. ECF No. 12 at 10. But it is difficult to determine what contract Mr. Brown seeks to enforce. He claims that the Government and its chosen contractors erred and caused the shipment of his belongings to encounter all the problems in the Philippines. ECF No. 1 at 2-3; ECF No. 14 at 2-4. But there is no contract that obligated the Army to coordinate his move for him.

The Government addresses its arguments at the GBL between it and AAVP because it is the only contract relevant to this case. That contract, however, obligates AAVP to facilitate the shipment and the Government to pay for it. ECF No. 12-1 at Appx 97. Mr. Brown was responsible for all the import customs, duties, and taxes. *Id*. And in his communications with the Army, he admitted that he was advised before his shipment left and that he was responsible for demurrage charges. *Id.* at Appx 114.

Recall that this process began when Mr. Brown applied to the Army to have it move his belongings to the Philippines. *Id.* at Appx 100. That application provides that Mr. Brown would

---

[3] The case before this court alleges breach of contract. To decide the breach of contract, the court is not reviewing the ABCMR decision and owes it no deference.

be "responsible for all applicable Import Customs, Duties, and Taxes." *Id.* And Mr. Brown was counseled about the move process by the Army. *Id.* at Appx 103-04. And Mr. Brown alleges that it was the paperwork issues involving the proper consignee that caused the delays and demurrage charges in the Philippines. ECF No. 1 at 2-4. As discussed above, however, all the issues involving the designation of Mr. Brown's wife as the consignee appear to implicate the various companies that were involved in the shipment. Mr. Brown asked AAVP to change the consignee to his wife. AAVP sent the information to The Pasha Group. But the shipping companies did not make the change and on the OBL to make Mr. Brown's wife the consignee.

Perhaps there could be a claim against one or more of the contractors—AAVP, The Pasha Group, either shipping line, and/or Asian Tigers. They are the ones that were responsible for the logistics of the shipping, not the Government. ECF No. 12-1 at Appx 97. In fact, that is an avenue the Government believes could be available to Mr. Brown. *See* ECF No. 12 at 11 n.10. And as Mr. Brown summarized his understanding to the Army,

> I understand [that I was] advised before my shipment left and that [I] was responsible for the demurrage charges but the issue at hand is these charges have become outrageously high . . . . I don't think I should be held accountable for the *mistakes that the shipping company made in this process*.

ECF No. 12-1 at Appx 114 (emphasis added). Whatever the merits of such a claim, Mr. Brown has failed to allege facts sufficient to state a claim against the United States.[4]

## IV.   Conclusion

The court GRANTS the Government's motion to dismiss, ECF No. 12. The Clerk's Office is directed to enter judgment accordingly.

It is so ORDERED.

s/ Edward H. Meyers<br>
Edward H. Meyers<br>
Judge

---

[4] Even if this case could proceed, it appears that both AAVP and Asian Tigers both advised Mr. Brown to pay the import duties and demurrage fees when they totaled a few thousand dollars. ECF No. 12 at 12 n.12. So did the Army. ECF No. 12-1 at Appx 42. While certainly beyond the scope of this opinion, to the extent there were a contract claim against the United States, a duty to mitigate the damages may well limit any recovery to what the outstanding demurrage fees were around that time. *Spodek v. United States*, 73 Fed. Cl. 1, 19 (2006).